IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

| 2:15-CR-9-H-1 | 2:15-CR-9-H-8 |
|---|---|
| 2:15-CR-9-H-2 | 2:15-CR-9-H-9 |
| 2:15-CR-9-H-3 | 2:15-CR-9-H-10 |
| 2:15-CR-9-H-4 | 2:15-CR-9-H-11 |
| 2:15-CR-9-H-5 | 2:15-CR-9-H-13 |
| 2:15-CR-9-H-6 | 2:15-CR-9-H-14 |
| 2:15-CR-9-H-7 | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER OF DETENTION PENDING** |
| | ) | **TRIAL** |
| LANN TJUAN CLANTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The government moved for detention of all 15 defendants in this case. By oral rulings announced on 7 and 8 May 2015, the court allowed the government's motions for detention with respect to 13 of the defendants: Lann Tjuan Clanton [1],[1] Ikeisha Jacobs [2], Jason Boone [3], Wardie Vincent Jr. [4], Adrienne Moody [5], Cory Jackson [6], Jimmy Pair Jr. [7], Curtis Boone [8], Antonio Tillmon [9], Alaina Sue-Kam-Ling [10],[2] Kavon Phillips [11], Alphonso Ponton [13], and Thomas Jefferson Allen II [14] ("subject defendants"). The court denied the motions with respect to the remaining two defendants, Crystal Pierce [12] and Tohsa Dailey [15],[3,4] and

---

[1] The bracketed number after each defendant's name indicates the numerical order in which that defendant was named in the indictment.

[2] The indictment gave this defendant's last name as "Kamling." At the session of her detention hearing on the morning of 8 May 2015, her counsel advised the court that her last name is actually "Sue-Kam-Ling," which the government did not dispute. (*See* D.E. 179). Without objection, the court accordingly directed that the docket be revised to reflect the correct spelling. (*See id.*).

[3] The indictment spelled this defendant's first name as "Tosha." At the session of her detention hearing on the afternoon of 7 May 2015, her counsel advised the court that her first name is actually spelled "Tohsa" and the government did not dispute this representation. (*See* D.E. 177). The accuracy of the representation is confirmed by

the court released them on conditions. The case is now before the court for entry of this written order on its oral rulings for detention.

I.  **Background**

On 22 April 2015, a 54-count indictment (D.E. 1) was returned against defendants. At the time of their arrest on the instant charges on 30 April 2015, all but two of the defendants were either: current officers with the Northampton County Sheriff's Office ("NCSO") (*i.e.*, Jacobs, Jason Boone, Pair, Curtis Boone, Allen); former officers with the NCSO (*i.e.*, Vincent, Jackson); a current officer with the Windsor City Police Department (*i.e.*, Tillmon); or current correctional officers with the North Carolina Department of Public Safety ("NCDPS") (*e.g.*, Moody, Sue-Kam-Ling, Phillips) or the Virginia Department of Corrections (*e.g.*, Clanton, Ponton). The remaining two defendants (the two whom the court released) are Dailey, a dispatcher with the NCSO, and Pierce, apparently a friend of Jacobs.

The offenses charged in the indictment are: conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine from about 7 November 2013 until the date of the indictment, in violation of 21 U.S.C. §§ 841(a)(1) and 846; conspiracy to use and carry firearms during and in relation to drug-trafficking crimes from about 7 November 2013 until the date of the indictment, in violation of 18 U.S.C. § 924(o); attempted Hobbs Act extortion by wrongful use of force, violence, or fear, in violation of 18 U.S.C. § 1951; use and carrying of a firearm during and in relation to Hobbs Act extortion, in violation of 18 U.S.C. § 924(c)(1)(A); attempted possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) or (ii), and 846, and, in some

---

the photograph of this defendant's driver's license in slide 34 of Government's Exhibit 6. Without objection, the court directed that the docket be revised to reflect the correct spelling. (*See id.*).

[4] All defendants are subsequently referred to herein by their last names, except that first names are also given with respect to the Boone defendants to distinguish between the two of them.

counts, 18 U.S.C. § 2; use and carrying of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and, in some counts, § 2; money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B); and bribery, in violation of 18 U.S.C. § 666(a)(1)(B). (*See* Indict.; Summary of Charges for Initial Appearance (D.E. 107-1) (setting out in chart format the charges as to each defendant and related information)). The mandatory minimum sentences the subject defendants face on the drug and § 924(c) counts are 90 years for Clanton; 65 years for Jason Boone, Jackson, Pair, and Curtis Boone; 40 years for Jacobs, Vincent, Moody, Tillmon, Sue-Kam-Ling, Phillips, and Ponton; and 10 years for Allen.

The government presented evidence that the Federal Bureau of Investigation ("FBI") initiated the investigation underlying this case, Operation Rockfish, in April 2013 to investigate reports of corruption within the NCSO. During the investigation, defendants were recorded transporting materials that they were told were, and were packaged as, cocaine and heroin, and drug proceeds for a large-scale drug trafficking organization ("DTO") in exchange for payments of money and, in two instances (*i.e.*, Clanton and Jacobs), Rolex watches. There were no real drugs or drug proceeds involved in the DTO. There were 14 separate transport operations, in addition to the operation defendants were told they were going to undertake and for which they reported to locations previously used in previous operations on the day of their arrest, 30 April 2015. The aggregate amount of purported drugs subject to the operations was 55 kilograms of cocaine and 60 kilograms of heroin, and the aggregate amount of purported drug proceeds $3 million. The total payments defendants accepted for their participation in the DTO, including cash bribes, cash extorted, and Rolex watches, exceeded $200,000 in value. Varying defendants participated in the operations. Firearms were typically carried during the operations.

While Clanton was recruited by undercover agents posing as members of the DTO, the remaining defendants were recruited by other defendants. The defendants understood that they were being recruited to work for the DTO because of their status as law enforcement or ties to law enforcement, and they were told to bring badges and guns to protect the drugs from law enforcement and other criminals.

## II. Proceedings on Detention Motions

At the initial appearance of all defendants on 1 May 2015, the government orally moved for detention of all 15 of them. (*See* D.E. 58; unnumbered D.E. after D.E. 70). The government followed with a written motion for detention of all defendants on Friday, 5 May 2015. (D.E. 147).

The detention hearings for defendants Clanton, Jacobs, Jason Boone, and Vincent began on the morning of Wednesday, 6 May 2015, and concluded that afternoon (*see* D.E. 172 (courtroom 2)), with the exception of the court's ruling, which was deferred to the following day (*see id.*; D.E. 177). The detention hearings for defendants Pair, Curtis Boone, Ponton, Allen, and Dailey began on the afternoon of 6 May 2015 (*see* D.E. 173 (courtroom 2)) and, with the exception of the court's ruling, concluded on the morning of the following day, 7 May 2015 (*see* D.E. 177 (fifth floor courtroom)). On the afternoon of Thursday, 7 May 2015, the court announced its ruling on the government's motions with respect to all the foregoing defendants. (*See* D.E. 177 (courtroom 1)). It allowed the motion as to each of them except Dailey (*see id.*), whom it released on conditions (D.E. 184).

Later on the afternoon of 7 May 2015, the court began the detention hearings for Moody, Tillmon, Sue-Kam-Ling, and Pierce. (*See* D.E. 178 (courtroom 1)). The hearings concluded the following morning, on Friday, 8 May 2015. (*See* D.E. 179 (courtroom 1)). The court allowed

the government's motion as to each of these defendants except Pierce (*see id.*), whom the court released on conditions (D.E. 186).

On the afternoon of 8 May 2015, the court held detention hearings for the remaining two defendants, Jackson and Phillips. (*See* D.E. 180 (courtroom 1)). The court allowed the motion as to both these defendants. (*See id.*).

At his or her detention hearing, each defendant presented the testimony of at least one proposed third-party custodian. Jason Boone also presented the testimony of a character witness. In addition, one defendant, Jacobs, submitted character letters (Jacobs Exs. 1 and 2), and another, Pierce, photographs of her home and the proposed custodial home, and a letter regarding a medical appointment of hers (Pierce Exs. A-C).

The government presented at each hearing the testimony of the same special agent with the FBI. It also made a slide presentation containing an "Executive Summary" of Operation Rockfish; a slide with photographs of each of the defendants; a chart of the 14 transport operations included in Operation Rockfish; a slide of selected alleged facts relating to each defendant; photographs and videotapes relating to each defendant; for most defendants, a slide showing items recovered at the defendant's arrest and post-arrest admissions the defendant made; and, again for most defendants, photographs of items recovered from the defendant at the time of the defendant's arrest. The slide presentations, including videotapes, were contained on compact disks the government submitted as exhibits.[5]

---

[5] The compact disks used by the government at the initial set of hearings (for Clanton, Jacobs, Jason Boone, and Vincent) were Gov.'s Exs. 1 (PowerPoint) and 2-5 (videos); at the second set of hearings (for Pair, Curtis Boone, Ponton, Allen, and Dailey) Gov.'s Exs. 4 (video) and 6 (PowerPoint); at the third set of hearings (for Moody, Tillmon, Sue-Kam-Ling, and Pierce) Gov.'s Exs. 3, 5, and 8 (videos), and 7 (PowerPoint); and for the fourth set of hearings (for Jackson and Phillips) Gov.'s Exs. 4, 5, and 10 (videos) and 9 (PowerPoint). At the government's request, without objection from any defendant, and pending entry of a protective order, the court directed the clerk to file the government's exhibits under temporary seal. It also directed defense counsel not to disseminate or make copies of the government's exhibits, but permitted counsel to show the contents of the exhibits to their clients in counsel's presence without any client retaining any exhibit.

In addition to the foregoing evidence, the United States Probation Office prepared, and the court reviewed carefully, a pretrial services report on each defendant. (D.E. 152 (J. Boone), 153 (Jacobs), 154 (Clanton), 156 (Vincent), 157 (Allen), 159 (C. Boone), 160 (Moody), 163 (Jackson), 164 (Pair), 166 (Pierce), 167 (Dailey), 168 (Ponton), 169 (Tillmon), 174 (Sue-Kam-Ling), 175 (Phillips)). Compilations of information for each subject defendant pertinent to his or her detention drawn from the evidence presented at the hearings, the pretrial services reports, and the indictment are appended to this order as Attachments A to M.[6]

## III. Discussion

Given the nature of certain charges against the subject defendants, namely, the drug conspiracy charges under 21 U.S.C. § 846 and firearms charges under 18 U.S.C. § 924(c), the rebuttable presumption of detention based on both flight risk and dangerousness in 18 U.S.C. § 3142(e)(3) applies, and the court has considered it, although each of the subject defendants presented sufficient evidence to shift the burden of production to the government. *See*, *e.g.*, *United States v. Guy*, No. 7:12–CR–134–F2, 2013 WL 121807, at *3 ¶ 3 (E.D.N.C. 9 Jan. 2013) (citing *United States v. Quatermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

In addition to the presumption, the principal findings and reasons underlying the court's determination that detention is required include the following: evidence showing that the government has a strong case, including the evidence reviewed above; the drug-, gun-, and corruption-related nature of the offenses charged; the circumstances of the offenses charged, including the period over which the DTO operated and the subject defendants participated in it, the multiplicity of the operations involved, the interstate nature of at least some operations,

---

[6] Because these attachments contain information from the government's hearing exhibits, the clerk is DIRECTED to file them under temporary seal, pending entry of a protective order.

continuation of the offense conduct until the subject defendants' arrest within the last two weeks, the amount of purported drugs and drug proceeds involved in the DTO's operations, the profound nature of the violation of legal obligations by subject defendants serving as law enforcement officers at the time of the alleged offenses (*i.e.*, all but Vincent and Jackson, who were former law enforcement officers), and the substantial prison terms the subject defendants face if convicted; the danger presented by the subject defendants if released, including the danger of gun-related criminal conduct to facilitate flight, other gun-related criminal conduct, and continued drug-trafficking activity by Clanton, Jacobs, and Moody (given Clanton and Jacobs' prior involvement with real drug traffickers and Moody's stated interest in obtaining drugs for her own distribution); the subject defendants' post-arrest employment status, namely, their loss of employment due to the instant charges,[7] suspension without pay, or ongoing unemployment; the absence of any accounting of the bribe/illicit[8] payments received; the specialized skills the subject defendants obtained as law enforcement officials; the unsuitability of the proposed third-party custodial arrangements as to all the proposed custodians due to the extent of the risk of flight and danger the subject defendants present and as to particular custodians due to their regular absence from the home for work (*i.e.*, the mothers of Jacobs, Jason Boone, and Phillips; the wives of Pair, Curtis Boone, Ponton; and the cousin of Moody), their apparent financial ties as spouse to the associated subject defendant (*i.e.*, the wives of Pair, Curtis Boone, and Ponton), and their limited capacity (*i.e.*, Tillmon's grandmother) or reliability (*i.e.*, Tillmon's friend,

---

[7] Moody was terminated as a NCDPS correctional officer, but the internet café where she worked, apparently on a part-time basis, has said she could resume working there if released.

[8] While the government referred throughout its presentations to the payments received by defendants as "bribe" payments, the court uses the term "bribe/illicit" payments herein because not all defendants were government officials when involved in the DTO, including two of the subject defendants.

based on the friendship nature of his relationship with Tillmon) to carry out the duties of custodian; and the other findings and reasons stated in open court.

The court considered evidence offered as mitigating, including but not limited to the subject defendants' lack of significant, if any, criminal histories and ties to the communities in which they live. It finds, however, that the factors favoring detention outweigh such evidence. The subject defendants' alleged offense conduct, for which the government has adduced substantial evidence and which many of the subject defendants have in central respects admitted, largely negates their prior good records. In addition, while some members of their communities undoubtedly support them (as substantiated by the presence of supportive family and friends at many hearings), they surely must be seen in much less favorable terms by others, even if such persons withhold final judgment pending completion of this litigation. In addition, the subject defendants' current employment ties to their communities are in jeopardy or have been cut.

With respect to flight, the court notes specifically that the subject defendants have a strong incentive to flee, grounded in, among other considerations, the substantial prison terms they face if convicted; the strength of the government's case, supported by admissions made,[9] which makes conviction more likely; and the unique concerns incarceration presents to former law enforcement personnel. The court lacks confidence that the legal requirement not to flee, even as expressed in a court order, would be honored by the subject defendants given the magnitude of their violation of legal obligations embodied in the alleged offense conduct. The scope of the violations is reflected in the amount of purported drugs, purported drug proceeds, and bribe/illicit payments involved in the DTO; the significant degree of participation in the DTO by the respective subject defendants (recognizing that the degree of participation varied);

---

[9] The court finds certain post-arrest statements by several of the subject defendants (*i.e.*, Tillmon, Sue-Kam-Ling, and Phillips) not to be credible based on other evidence presented. (*See* Attachs. I, J, K).

the duration of such participation (again, which varied), over which there was ample time for reflection and abandonment of involvement; and, perhaps most significantly, the status of the subject defendants (other than Vincent and Jackson) as law enforcement officials when participating in the DTO in violation of their special duty to uphold the law. Many such officials, no less, were in leadership positions: Jason Boone as a captain, Pair as a lieutenant, and Jacobs and Allen as sergeants in the NCSO, and Ponton as a correctional officer sergeant in the Virginia Department of Corrections. Moreover, the disregard of the law continued up until less than two weeks ago. Thus, it is a current predilection, not a remote one in the distant past.

Even though the drugs and drug proceeds were not real, that fact does not negate the demonstrated willingness of the subject defendants to violate the law because the record before the court shows that the subject defendants believed them to be real. Similarly, although the FBI arguably established the contours of the DTO, the record does not show for purposes of the court's detention analysis that any of the subject defendants were precluded by the government from rejecting at the outset or abandoning at any time participation in the DTO. Only one of the subject defendants, Clanton, was recruited by a government agent.

While the subject defendants in the past had ties to their communities, some very strong, those ties are attenuated for the reasons previously noted. Moreover, particularly in light of their law enforcement backgrounds, the subject defendants knew that by participation in the DTO they were taking the risk that they would be separated from their communities, as well as their families, by extended incarceration. Yet they took that risk and now face the strong possibility of such incarceration. In this regard, they have less to lose than before. While flight from prosecution would separate them from their communities and families, separation may well occur anyway.

Further, given their law enforcement backgrounds, the subject defendants undoubtedly have skills to facilitate flight. Such skills were likely enhanced among those—Clanton, Jackson, and Jason Boone—who attended the class Vincent held on improving the DTO's techniques to avoid interdiction by law enforcement. In addition, the substantial bribe/illicit payments received, whose whereabouts are not known, could be a resource to facilitate flight.

As noted, the court has also considered with respect to flight the rebuttable presumption of detention on that ground under 18 U.S.C. § 3142(e)(3), notwithstanding the subject defendants' rebutting the presumption for purposes of the burden of production. The government's burden was to show, by a preponderance of the evidence, that no condition or combination of conditions would reasonably assure the appearance of the subject defendants as required before trial if released. For the reasons stated herein and in open court, the court finds that the government has met this burden.

With respect to the risk of danger presented by the subject defendants, the fact that the DTO was not real tends to attenuate the danger that the subject defendants would again participate in drug-trafficking activity if released. The obvious reason is that there is no DTO to which to return. But a significant danger of continued drug-trafficking activity does exist with respect to Clanton, because of his statements that he had previously engaged in robberies of drug dealers; Jacobs, because of her statements that she had been transporting drugs and drug proceeds for a real DTO for the prior three years and attempted to broker a deal for the sale of drugs by one DTO to another; and Moody, because of her request to another DTO member to front her 10 kilograms of drugs to distribute herself.

The subject defendants as a group, however, do present a risk of danger associated with flight. They have specialized law enforcement skills, including firearms skills, that could be used to facilitate flight and, in the process, present a risk of safety to others.

The subject defendants also present a more generalized risk of dangerous criminal activity. As recently as within the last two weeks, they demonstrated by their conduct that they view themselves as above the law. Moreover, their conduct entailed the risk of violence. They willingly placed themselves in the position of protecting by force drug-trafficking activity, a notoriously violent enterprise. In doing so, they carried and/or associated with others who carried firearms.

There is, of course, an element of desperation to the situation in which the subject defendants have placed themselves. The government has a strong case against them. To the extent that financial concerns motivated their participation in the DTO, their employment situation is now worse (with the possible exception of Jackson, who was previously unemployed).

The court has, as indicated, considered with respect to dangerousness the rebuttable presumption of detention on that ground under 18 U.S.C. § 3142(e)(3), notwithstanding the subject defendants' rebuttal of the presumption for purposes of the burden of production. The government's burden was to show, by clear and convincing evidence, that no condition or combination of conditions would reasonably assure the safety of another person and the community before trial if the subject defendants were released. The court appreciates that this is a higher standard than that relating to flight. Nonetheless, for the reasons stated herein and in open court, the court finds that the government has met this standard.

## IV. Conclusion

After careful consideration pursuant to 18 U.S.C. § 3142(g) of the record developed before it, and based on the findings and reasons stated in open court and above, the court finds by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community before trial, and by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure the appearance of the subject defendants as required before trial if they are released.

IT IS THEREFORE ORDERED as follows:

1. The government's motions for detention (unnumbered D.E. after D.E. 70; D.E. 147) are ALLOWED as to the subject defendants, again, Lann Tjuan Clanton [1], Ikeisha Jacobs [2], Jason Boone [3], Wardie Vincent Jr. [4], Adrienne Moody [5], Cory Jackson [6], Jimmy Pair Jr. [7], Curtis Boone [8], Antonio Tillmon [9], Alaina Sue-Kam-Ling [10], Kavon Phillips [11], Alphonso Ponton [13], and Thomas Jefferson Allen II [14].

2. The subject defendants are committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The subject defendants shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the subject defendants to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

This, the 12th day of May 2015.

_____
James E. Gates
United States Magistrate Judge